UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES ex rel. ) | | |
| Frank M. Cassaday, ) | | |
| ) | | |
| *Qui Tam* Plaintiff, ) | | |
| ) | | |
| v. ) | Case No. 07-cv-01485 | |
| ) | | |
| KBR, INC., ) | | |
| KELLOGG, BROWN AND ROOT ) | | |
| SERVICES, INC., and SERVICE ) | | |
| EMPLOYEES INTERNATIONAL, INC. ) | | |
| ) | | |
| Defendants. ) | | |

### DEFENDANTS' MOTION TO COMPEL ARBITRATION, TO SEVER, AND TO STAY ARBITRABLE CLAIMS

Defendants, KBR, Inc., Kellogg Brown & Root Services, Inc., and Service Employees International, Inc. ("SEII") (collectively, "KBR"), move the Court to compel Plaintiff, Frank M. Cassaday, to submit his employment-related claims against KBR to arbitration pursuant to his written agreement.  KBR further moves that all arbitrable claims raised by Cassaday be severed from the remaining claims and stayed pending arbitration.

### I.  Statement of the Issue

Cassaday is a former employee of SEII who was employed in support of KBR's contract with the United States Department of Defense (the "LOGCAP

Contract").[1]  In this lawsuit, Cassaday asserts two distinct types of claims against KBR.  Cassaday's first two claims, for "False Claims" and "False Statements" are brought on behalf of the Government under the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729-33 ("FCA").  KBR is moving separately to dismiss those counts.  In addition, Cassaday asserts, in Count III, a retaliation claim, which is the focus of this motion.  In that count, suing on his own behalf, Cassaday contends that his employer retaliated against him for having engaged in conduct protected under the False Claim Act.

This motion arises from Cassaday's refusal to honor his agreement to resolve this employment-related claim through arbitration, pursuant to KBR's Dispute Resolution Program (the "DRP").  Cassaday, in writing, agreed to arbitrate any and all claims he may have related to his employment.  The Federal Arbitration Act ("FAA") mandates the enforcement of arbitration agreements where such agreements are valid under general principles of contract law.  The parties' arbitration agreement is enforceable under the FAA, and Cassaday should be ordered to arbitrate his employment retaliation claim.

---

[1] LOGCAP, which is an abbreviation for Logistics Civil Augmentation Program, refers to the program under which the Department of Defense retained Halliburton and certain Halliburton affiliates to perform specified civil services in support of military operations.  (*See generally*, Plaintiff's Complaint, ¶¶ 90-100)

## II. Statement of Material Facts

**A.     Cassaday's Agreement to Arbitrate Employment Disputes.**

Cassaday was hired by SEII in July 2004 to perform maintenance and repair of refrigeration equipment and ice machines in Iraq in connection with the LOGCAP contract. (Plaintiff's Complaint, ¶ 18; Exhibit A, Attachment 1) He worked for SEII until approximately May 2005 when he quit his employment. (Plaintiff's Complaint, ¶ 88)

When he was hired by SEII, Cassaday signed an employment agreement that outlined the general terms and conditions of his employment with KBR. (Exhibit A, Attachment 1) The agreement obligates Cassaday to resolve all employment disputes through KBR's dispute resolution program. Specifically, paragraph 26 of that agreement provides, in relevant part and in bold print:

> **26.     Claims/Disputes**
> **In consideration of your employment, you agree that your assignment, job or compensation can be terminated with or without cause, with or without notice at any time at your option or at Employer's option. You also agree that you will be bound by and accept as a condition of your employment the terms of the Halliburton Dispute Resolution Program[2] which are herein incorporated by reference. You understand that the Dispute Resolution Program requires, as its last step, that any and all claims that you might have against Employer related to your employment, including your termination, and any and all personal injury claim arising in the workplace, you have against**

---

[2] The Halliburton DRP has since been renamed the "KBR Dispute Resolution Program." (Exhibit B, ¶ 3)

3

> **other parent or affiliate of Employer, must be submitted to binding arbitration instead of to the court system.**
>
> **It is expressly understood that, in the case of any controversy described above, all parent, subsidiary and affiliate or associated corporations of Employer, and of their officers, directors, employees, insurers and agent are third party beneficiaries to this provision and are entitled to invoke, enforce and participate in arbitration pursuant to this provision.**

(*Id.*)

Cassaday also signed a "New Hire/Rehire" form that contained the following provision regarding arbitration:

> In consideration of my employment, I agree that my assignment, job or compensation can be terminated with or without cause, with or without notice at any time at the option of the Company or myself. I also agree that I will be bound by and accept as a condition of employment the terms of the Halliburton Dispute Resolution Program which are herein incorporated by reference. I UNDERSTAND THAT THE DISPUTE RESOLUTION PROGRAM REQUIRES, AS ITS LAST STEP, THAT ANY AND ALL CLAIMS THAT I MIGHT HAVE AGAINST THE COMPANY RELATED TO MY EMPLOYMENT, INCLUDING MY TERMINATION, AND ANY AND ALL PERSONAL INJURY CLAIMS ARISING IN THE WORKPLACE I HAVE AGAINST ANY OTHER PARENT OR AFFILIATE OF THE COPMANY, BE SUBMITTED TO BINDING ARBITRATION INSTEAD OF TO THE COURT SYSTEM. . . .

(*Id.*, Attachment 2)

**B.    The KBR Dispute Resolution Program**

The KBR Dispute Resolution Program, which is incorporated by reference in Cassaday's employment agreement and the New Hire/Rehire form, provides an effective and fair means of finally resolving all employment disputes. The dispute

4

resolution process established by the DRP culminates in binding arbitration before an independent and neutral arbitrator.  (Exhibit B, Attachment 2, at 5, 16, 20)  The DRP facilitates resolution of disputes without the expense and delay of litigation, permits representation of the employee by legal counsel, provides for discovery in accordance with the Federal Rules of Civil Procedure, and authorizes an award of attorneys' fees to employees who prevail in the arbitration.  (Exhibit B, Attachment 1, at 6, 11)  The company pays all administrative expenses of the arbitration process except for a $50 filing fee.  (Exhibit B, Attachment 2, at 14)  Under its Legal Consultation Plan, the DRP also will pay up to $2,500 per year to help employees cover the cost of consulting with an attorney of their choice about their legal rights.  (Exhibit B, Attachment 2, at 15)

The DRP does not restrict or modify an employee's substantive rights under any law or statute and places no limitation on available remedies.  (Exhibit B, Attachment 1, at 5-6)  Rule 30 of the DRP Rules makes this clear:

> The arbitrator's authority shall be limited to the resolution of legal Disputes between the Parties.  As such, the arbitrator shall be bound by and shall apply applicable law including that related to the allocation of the burden of proof as well as substantive law.  The arbitrator shall not have the authority either to abridge or enlarge the substantive rights available under applicable law.

(*Id*. at 15-16)  The DRP brochure similarly explains that, "in arbitration, it's possible for you to seek or receive any award you might seek through the court

5

system."  (Exhibit B, Attachment 2, at 18)  Thus, all employees of KBR and its affiliates can obtain the same relief in arbitration that they can in court.

### III.  Legal Points and Authorities

**A.     Cassaday's Agreement to Arbitrate Is Enforceable Under the Federal Arbitration Act.**

Cassaday's employment agreement provides that the arbitration clause shall be "governed by and construed in accordance with the Federal Arbitration Act." (Exhibit A, Attachment 1, ¶ 25)  Section 2 of the Federal Arbitration Act provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of a contract, transaction, or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  Thus, the FAA mandates the enforcement of arbitration agreements where such agreements (1) are part of a contract or transaction involving commerce and (2) are valid under general principles of contract law.  *Id.*; *Doctor's Associates, Inc. v. Casarotto*, 116 S. Ct. 1652, 1657 (1996). The arbitration agreement between Cassaday and SEII satisfies both requirements and is, therefore, enforceable under the FAA.

6

> **1. Cassaday's Employment Relationship With SEII Involved Commerce.**

The United States Supreme Court has held that the FAA's reference to commerce reflects Congress' intent to extend the FAA's coverage to the limits of federal power under the Commerce Clause. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 268 (1995). In so holding, the Court recognized that the determination of whether a transaction or contract "involves" commerce requires an expansive construction of the term in order to effectuate Congress' goal of encouraging alternative dispute resolution mechanisms. *Id*. Accordingly, the Court held that a matter "involves" commerce under the FAA if it merely "affects" commerce, a standard commonly applied by the Court to situations in which it is clear that Congress intended to exercise its Commerce Clause powers to the fullest extent. *Id*.

Section 1 of the FAA defines "commerce" as "commerce among the several States or with foreign nations . . . ." 9 U.S.C. § 1. SEII's contractual relationships with Cassaday were expressly connected with an underlying contract with the United States Army, under which SEII, through employees such as Cassaday, provides various support services to the U.S. military's operations in Iraq. (Ex. A, Attachment 1, Preamble) Moreover, Cassaday traveled from Alliance, Ohio to Houston, Texas to execute his employment agreement and then from the U.S. to

7

Iraq to work. (*Id.*, Preamble, ¶ 34) Consequently, his employment relationship with SEII involved commerce under the FAA.

### 2. The Arbitration Agreement Between Cassaday and SEII is Valid under General Principles of Contract Law.

The validity of an arbitration agreement is determined by reference to general principles of contract law. *Doctor's Assocs. Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996); *see also Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (noting that "state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally") However, to the extent that state law carves out special rules for arbitration agreements that do not apply generally to all contracts, it is "inconsonant with, and is therefore preempted by, the federal [act]." *Doctor's Assocs.*, 517 U.S. at 688.

Cassaday signed two distinct documents that set forth his obligation to arbitrate disputes under the DRP. Both his employment agreement and the "New Hire/ReHire" form contain an unambiguous statement of this commitment. And, although there is no requirement under the FAA that an arbitration clause be noted conspicuously within a contract, in this particular case, both documents highlighted the arbitration provision.

8

Cassaday cannot claim that he was unaware of his agreement to arbitrate at the time he signed it. It is well established that, absent fraud or duress, a party who signs a document is conclusively presumed to have read and understood its contents. *E.g.*, *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996) (noting additionally that there is nothing per se unconscionable about arbitration agreements and that Texas courts favor dispute resolution through arbitration); *GWL, Inc. v. Robichaux*, 643 S.W.2d 392, 393 (Tex. 1982).

Moreover, the arbitration program to which Cassaday agreed is fair and reasonable. The DRP does nothing more than shift the forum for resolution from the courts to arbitration. The program does not restrict or eliminate the parties' substantive claims, defenses, or remedies. It permits discovery in accordance with the federal rules of civil procedure. The program provides for the appointment of a neutral arbitrator who must issue a written award and state the reasons therefore if requested by either party. Finally, the company bears all of the costs of the arbitration process other than an initial $50.00 filing fee. (*See generally*, Exhibit B, Attachments 1 & 2)

Courts within the Fifth Circuit and Texas have consistently enforced the Halliburton and KBR DRP and ordered arbitration of employment claims that fall within its scope. *E.g.*, *Dodds v. Halliburton Energy Servs.*, 273 F.3d 1094 (5th Cir. 2001 (unpublished, attached as Exhibit C); *Barker v. Halliburton Co.*, 541

F.Supp.2d 879 (S.D. Tex. 2008); *Reynolds v. Halliburton Co.*, 217 F. Supp.2d 756 (E.D. Tex. 2002); *In re Halliburton*, 80 S.W.3d 566 (Tex. 2002); *In re Kellogg Brown & Root*, 80 S.W.3d 611 (Tex. App. –Houston [1st Dist.] 2002, no pet.). *See also United States ex. rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370 (4th Cir. 2008); *United States ex rel. McBride v. Halliburton Co.*, 2007 WL 1954441 (D.D.C. July 5, 2007), *Kellogg, Brown & Root, Inc. v. Bragg*, 250 F. Supp.2d 664 (S.D.W.V. 2003); *Pierce v. Kellogg, Brown & Root, Inc.*, 245 F. Supp.2d 1212 (E.D. Okla. 2003).

### 3. FCA Retaliation Claims are Arbitrable like all other Federal Statutory Employment Claims.

The FAA embodies the liberal federal policy that favors resolution of disputes by arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983). This policy extends to federal statutory claims, including claims arising under the federal civil rights and employment statutes, unless "Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 11 S. Ct. 1647, 1652 (1991) (citation omitted). As the Court in *Gilmer* noted, "it is by now clear that statutory claims may be the subject of an arbitration agreement . . . ." *Id. See also Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 121 S. Ct. 513 (2000) (holding that "even claims arising under a statute designed to further important social policies may be arbitrated

because, so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum, the statute serves its functions").

The Fourth Circuit, in the only appellate decision that addresses the arbitrability of FCA retaliation claims,[3] recently held that such claims are arbitrable. In *United States ex. rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370 (4th Cir. 2008), the court held that nothing in the anti-retaliation provision of the FCA prohibits employees from waiving their right to pursue such claims in court. *Id.* at 381. Two other district courts have held that FCA retaliation claims against KBR must be arbitrated under the DRP. *United States ex. rel. Godfrey v. Kellogg Brown & Root, Inc.*, No. 1:05cv1418 (E.D.Va. Nov. 13, 2007) (attached as Exhibit D); *United States ex rel. McBride v. Halliburton Co.*, 2007 WL 1954441 at *4-5 (D.D.C. July 5, 2007) (attached as Exhibit E).[4] Other courts have also held that FCA retaliation claims are subject to arbitration. *E.g. Orcutt v. Kettering Radiologists, Inc.*, 199 F. Supp.2d 746 (S.D. Ohio 2002); *Mikes v. Strauss*, 889 F. Supp. 746 (S.D.N.Y. 1995).[5]

---

[3] The Fourth Circuit has also held that the United States must arbitrate an FCA claim where it has contractually agreed to do so. *United States v. Bankers Ins. Co.*, 245 F.3d 315, 324-25 (4th Cir. 2001). If the victim who the statute is foremost designed to protect can be required to arbitrate, then so too can a victim of alleged retaliation.

[4] Counsel for Cassaday was counsel for the relator in each of those other three cases in which federal courts ordered FCA retaliation claims to arbitration.

[5] The only decision to the contrary, *Nguyen v. City of Cleveland*, 121 F. Supp.2d 643 (N.D. Ohio 2000), rests on flawed reasoning that no other court has found convincing. *See Wilson*, 525 F.3d at 381 (noting, "other courts to consider that issue have not found *Nguyen* persuasive"). In *Nguyen*, the court acknowledged that nothing in the statute's text or legislative

**B.      Cassaday's Employment Claim is Subject to His Arbitration Agreement; Therefore, this Court Should Sever That Employment-Related Claim and Compel Cassaday to Submit That Claim to Arbitration.**

Cassaday claims that he was retaliated against for engaging in conduct protected by the FCA. Specifically, he contends that was "discharged, suspended, threatened, harassed, and in other manners discriminated against in the terms and condition of employment." (Complaint, ¶ 145) This claim relates to his employment, and falls within the scope of the DRP.

The DRP broadly encompasses all claims or disputes arising during, or after the termination of, the employment relationship with SEII. (Ex. B, Attachment 1 at 2). The scope extends to "all legal and equitable claims . . . whether in contract, tort, under statute or regulation, or some other law, between persons bound by the Plan . . . ." (*Id.*) Thus, Cassaday's retaliation claim is encompassed within the terms of the parties' arbitration agreement.

Moreover, if there was any uncertainty as to whether these claims are covered by the DRP, the United States Supreme Court has made clear that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including under circumstances where the issue is the construction of

---

history precluded arbitration but nonetheless refused to enforce the arbitration agreement because of a perceived imbalance in bargaining power between the parties. *Nguyen*, 121 F. Supp.2d at 647. However, whether the agreement is enforceable under state contract law is an issue distinct from whether Congress intended to preclude arbitration in any instance. The court confused the two issues and, as result, incorrectly held that FCA retaliation claims are not arbitrable.

the contract language. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24-25 (1983). Given the broad ambit of the contractual language, and the presumption favoring arbitration, all claims raised by Cassaday that relate to his employment in any manner are subject to the DRP.

Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3. This provision requires the trial court to stay judicial proceedings where the issues presented in the lawsuit are encompassed within a valid agreement to arbitrate. The FAA leaves the trial court no discretion on this point; rather, the FAA mandates that courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement exists. 9 U.S.C. §§ 3, 4.

Where, as here, only one of the claims raised is arbitrable, the appropriate procedure is to sever that claim from the non-arbitrable ones and allow the litigation to proceed with respect to the latter claims. *Collins & Aikman Prods Co. v. Building Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995). Consequently, Defendants

request that the Court sever[6] Cassaday's Third Claim and stay the lawsuit resulting from such severance pending arbitration of his employment claim.

### C. Cassaday's Employment Claims Against All Defendants Must Be Arbitrated.

Cassaday asserts his employment claim against all defendants, not just his former employer, SEII. Regardless of who he purports to sue, under the terms of his agreement with SEII, Cassaday must arbitrate his employment-related claim against all Defendants.

It is well-established that an intended third party beneficiary of a contract may enforce that contract. *Brick v. J.C. Bradford & Co.*, 677 F. Supp. 1251, 1256-57 (D.D.C. 1987) (holding that non-signatories to an arbitration agreement were entitled to enforce the agreement where it was clear that they were intended beneficiaries of that agreement). *See also Pritzker v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121 22 (3rd Cir. 1993); *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1358 60 (2d Cir. 1993); *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 82 (6th Cir. 1990); *Nesslage v. York Securities, Inc.*, 823 F.2d 231, 233 34 (8th Cir. 1987); *Letizia v. Prudential Bache Securities*, 802 F.2d 1185, 1187 88 (9th Cir. 1986).

---

[6] Fed. R. Civ. P. 21 permits a court to sever any claims against a party. Upon severance, those claims form a new lawsuit, distinct and independent from the former lawsuit in which those claims were initially raised. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1518, n.8 (10th Cir. 1991).

14

The contract between Cassaday and SEII expressly provides that affiliated or associated companies, and employees of those companies, are "third party beneficiaries to this provision and are entitled to invoke, enforce and participate in arbitration pursuant to this provision." (Ex. A, Attachments 1, ¶ 26)  The DRP likewise provides that all claims against the "Company," which includes the Sponsor and any subsidiary of the Sponsor must be arbitrated.  (Exhibit B, Attachment 1 at 1, ¶ 2(E))  Accordingly, Cassaday's employment-related claim, regardless of who he names as a defendant, must be resolved through arbitration.

## IV. Conclusion

Cassaday and his employer, SEII, entered into an arbitration agreement that is valid and enforceable under the Federal Arbitration Act.  That agreement encompasses Cassaday's retaliation claim against all Defendants.  Accordingly, Defendants respectfully request that the Court order Cassaday to arbitrate that claim, and that such claim be severed and stayed pending arbitration.

Respectfully submitted,

/s/ Kathleen A. Gallagher
Kathleen A. Gallagher
Texas Bar No. 07585550
VINSON & ELKINS L.L.P.
1001 Fannin St., Suite 2500
Houston, Texas  77002-6760
Tel.:  713.758.2436
Fax:  713.615.5877

Alden L. Atkins, *Pro Hac Vice* Pending
John M. Faust, *Pro Hac Vice* Pending
VINSON & ELKINS L.L.P.
The Willard Office Building
1455 Pennsylvania Ave., N.W.
Washington, D.C.  20004-1008
Tel.:  202.639.6613
Fax:  202.879.8813

Vanessa Griffith
VINSON & ELKINS L.L.P.
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas  75201-2975
Tel.:  214.220.7713
Fax:  214. 999.7713

**ATTORNEYS FOR DEFENDANTS KBR, INC., KELLOGG BROWN & ROOT SERVICES, INC., AND SERVICE EMPLOYEES INTERNATIONAL, INC.**

## **CERTIFICATE OF SERVICE**

     I hereby certify that on June 20, 2008, the foregoing document was filed electronically in accordance with Local Rule 5.1 and the Administrative Procedures for Electronic Filing in Civil and Criminal Cases.  As such, this document was automatically served on all attorneys of record who have registered as filing users upon issuance of the Notice of Electronic Filing and/or otherwise by U.S. mail, as listed below:

Philip H. Hilder
Hilder & Associates, P.C.
819 Lovett Blvd.
Houston, Texas  77006

Alan M. Grayson
Grayson & Kubli, P.C.
8605 Westwood Center Drive, Suite 410
Vienna, Virginia  22182

                                          /s/ Kathleen A. Gallagher
                                          Attorney for Defendants