**EXHIBIT B**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

UNITED STATES ex rel. )
Frank M. Cassaday, )
 )
   *Qui Tam* Plaintiff, )
 )
v. )   Case No. 07-cv-01485
 )
KBR, INC., )
KELLOGG, BROWN AND ROOT )
SERVICES, INC., and SERVICE )
EMPLOYEES INTERNATIONAL, INC. )
 )
   Defendants. )

## DECLARATION OF JANET HILL

I, Janet Hill, am of sound mind, over the age of twenty-one, competent to make this Declaration, and I have personal knowledge of the truth of its contents. I make the following declaration under penalty of perjury:

"1. I am employed by KBR, Inc. ("KBR") as Manager, Dispute Resolution Program. I have been in this position since January 1999.

2. The office of the Dispute Resolution Program maintains copies of the current and previous versions of the Dispute Resolution Program. These records are maintained in the ordinary course of business, are prepared by a person with

knowledge of the underlying facts, at or near the time of the implementation of each new version of the program.

2.    Attached hereto as Attachments 1 and 2 are true and correct copies of the Halliburton *Dispute Resolution Plan and Rules* that were in effect from during the period from June 2004 through May 2005.

3.    After the spin-off of KBR from Halliburton became effective, the dispute resolution program applicable to employees of KBR and its affiliates and subsidiaries was renamed the KBR Dispute Resolution Program.

4.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct."

_Janet Hill_____        _6/12/08_____
JANET HILL                       DATE

# ATTACHMENT 1

# The Halliburton
# Dispute Resolution Plan

1.  **Purpose and Construction**

    The Plan is designed to provide a program for
    the quick, fair, accessible, and inexpensive
    resolution of Disputes between the Company and
    the Company's present and former Employees
    and Applicants for employment, related to or
    arising out of a current, former or potential
    employment relationship with the Company. The
    Plan is intended to create an exclusive procedural
    mechanism for the final resolution of all Disputes
    falling within its terms. It is not intended either
    to abridge or enlarge substantive rights available
    under applicable law. The Plan contractually
    modifies the "at-will" employment relationship
    between the Company and its Employees, but
    only to the extent expressly stated in this Plan.
    The Plan should be interpreted in accordance
    with these purposes.

2.  **Definitions**

    A.  "AAA" means the American Arbitration
        Association.

    B.  "JAMS" means Judicial Arbitration and
        Mediation Services.

    C.  "CPR" means the Center for Public
        Resources.

    D.  The "Act" means the Federal Arbitration Act,
        9 U.S.C. § 1, et seq., as amended from time to
        time.

    E.  "Company" means Sponsor and every
        subsidiary (first tier and downstream)
        Sponsor, any Electing Entity, any entity or
        person alleged to have joint and several
        liability concerning any Dispute, and all of
        their directors, officers, employees, and
        agents, every plan of benefits, whether or not
        tax-exempt, established or maintained by
        any such entity, the fiduciaries, agents and
        employees of all such plans, and the
        successors and assigns of all such entities,
        plans and persons, provided, however, that
        in the case of an Electing Entity, "Company"
        shall include the Electing Entity only to the
        extent provided in the Electing Entity's
        agreement to be bound by this Plan.

1

F.   "Dispute" means all legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between persons bound by the Plan or by an agreement to resolve Disputes under the Plan, or between a person bound by the Plan and a person or entity otherwise entitled to its benefits, including, but not limited to, any matters with respect to:

1.   this Plan;

2.   the employment or potential re-employment of an Employee, including the terms, conditions, or termination of such employment with the Company;

3.   employee benefits or incidents of employment with the Company;

4.   any other matter related to or concerning the relationship between the Employee and the Company including, by way of example and without limitation, allegations of: discrimination based on race, sex, religion, national origin, age, veteran status or disability; sexual or other kinds of harassment; workers' compensation retaliation; defamation; infliction of emotional distress; or status, claim or membership with regard to any employee benefit plan;

5.   an Applicant's application for employment and the Company's actions and decisions regarding such application; and

6.   any personal injury allegedly incurred in or about a Company workplace.

"Dispute" includes all such matters regardless of when the events on which they are based occurred, including matters based on events occurring before the Employee became subject to this Plan (so long as such disputes were not previously asserted in a judicial forum) or after termination of the employment relationship.

G.   "Electing Entity" means any legal entity which has agreed to be bound by the Plan as provided herein.

H.   "Employee" means any person who is or has been in the employment of the Company on or after the effective date of this Plan, whether or not employed at the time a claim is brought with respect to a Dispute, residing in the United States, or otherwise subject to the laws of the United States or any state, municipality, or other political subdivision of the United States.

I.   "Applicant" means any person who is seeking or has sought employment with the Company after the effective date of this Plan.

J.   "Party" means, with respect to a particular Dispute, affected persons and/or entities bound by this Plan.

K.   "Plan" means this Halliburton Dispute Resolution Plan, as amended from time to time.

L.   "Rules" means the Halliburton Dispute Resolution Rules, as amended from time to time, which are applicable to mediation and arbitration.

M.   "Sponsor" means The Halliburton Company, a Delaware Corporation.

3.   Name, Application and Coverage

A.   The Plan shall be referred to as the "Halliburton Dispute Resolution Plan." Alternatively, it may be referred to as the "Halliburton Dispute Resolution Program" or the "Dispute Resolution Program."

B.   Until revoked by Sponsor pursuant to this Plan, this Plan applies to and binds the Company, each Employee and Applicant and the heirs, beneficiaries and assigns of any such person or entity; provided, however, that this Plan shall not apply to any Employee in a unit of Employees represented by a labor organization, or to the Company with respect to such employees, except to the extent permitted in an applicable collective bargaining agreement or lawfully imposed by the Company when no collective bargaining agreement is in effect.

C.   Except as provided for herein, this Plan applies to any Dispute.

2

3

D.  Notwithstanding anything to the contrary in this Plan, the Plan does not apply to claims for workers' compensation benefits or unemployment compensation benefits.

E.  Mediation and arbitration are only available for Disputes involving legally protected rights.

F.  Notwithstanding any other provision hereof, any court with jurisdiction over the Parties may issue any injunctive orders (including preliminary injunctions) if the necessary legal and equitable requirements under applicable law are met pending the institution of proceedings under the Plan.

4.  Resolution of Disputes

All Disputes not otherwise settled by the Parties shall be finally and conclusively resolved under this Plan and the Rules.

5.  Confidentiality

A.  The Dispute Resolution Program ("Program"), its Administrator, any subordinate administrators, the staff of the Program and any other person conducting conferences or serving as an impartial third party on behalf of the Program in any in-house dispute resolution process conducted under the auspices of the Program, will hold matters reported under the Program and related communications in confidence, in keeping with the Standards of Practice and the Code of Ethics of The Ombudsman Association. The Code of Ethics and the Standards of Practice of The Ombudsman Association are incorporated into this Plan by reference and appended.

For purposes of requests by or subpoenas from any Party that the Program Administrator or any subordinate administrators, or any member of the staff of the Program or person conducting conferences or serving as an impartial third party on behalf of the Program in any in-house dispute resolution process conducted under the auspices of the Program, provide testimony in any internal or external investigation, administrative hearing, or arbitration or litigation proceeding, the confidentiality standards described in this

section attach to the Dispute Resolution Program, rather than any individual disputant. This means that only the Program, rather than any individual disputant, may waive confidentiality, and the Program may only waive confidentiality, even upon request or subpoena by a disputant, under circumstances consistent with The Ombudsman Association Code of Ethics and Standards of Practice.

B.  No employee shall be subject to any form of discipline or retaliation for initiating or participating in good faith in any process or proceeding under this Plan.

6.  Amendment

A.  This Plan may be amended by Sponsor at any time by giving at least 10 days notice to current Employees. However, no amendment shall apply to a Dispute for which a proceeding has been initiated pursuant to the Rules.

B.  Sponsor may amend the Rules at any time by serving notice of the amendments on AAA, JAMS, and CPR. However, no amendment of the Rules shall apply to a Dispute for which a proceeding has been initiated pursuant to the Rules.

7.  Termination

This Plan may be terminated by Sponsor at any time by giving at least 10 days notice of termination to current Employees. However, termination shall not be effective as to Disputes for which a proceeding has been initiated pursuant to the Rules prior to the date of termination.

8.  Applicable Law

A.  The Act shall apply to this Plan, the Rules, and any proceedings under the Plan or the Rules, including any actions to compel, enforce, vacate or confirm proceedings, awards, orders of an arbitrator, and settlements under the Plan or the Rules.

B.  Other than as expressly provided herein, or in the Rules, the substantive legal rights, remedies, and defenses of all Parties are

4

5

preserved. In the case of arbitration, the arbitrator shall have the authority to determine the applicable law and to order any and all relief, legal or equitable, including punitive damages, which a Party could obtain from a court of competent jurisdiction on the basis of the claims made in the proceeding.

C. Other than as expressly provided herein, or in the Rules, the Plan shall not be construed to grant additional substantive, legal, or contractual rights, remedies or defenses which would not be applied by a court of competent jurisdiction in the absence of the Plan.

D. Notwithstanding the provisions of the preceding subsection, in any proceeding before an arbitrator, the arbitrator, in his discretion, may allow a prevailing Employee or Applicant a reasonable attorney's fee as part of the award. The discretion to allow an award of fees under this subsection is in addition to any discretion, right or power which the arbitrator may have under applicable law. However, any award of fees shall be reduced by any amounts which have been or will be paid by the Halliburton Employee Legal Assistance Plan.

9. **Administrative Proceedings**

A. This Plan shall apply to a Dispute pending before any local, state or federal administrative body or court unless prohibited by law.

B. Participation in any administrative or judicial proceeding by the Company shall not affect the applicability of the Plan to any such Dispute upon termination of the administrative or judicial proceedings. A finding, recommendation or decision by an administrative body on the merits of a Dispute shall have the same legal weight or effect under the Plan as it would in a court of competent jurisdiction.

10. **Exclusive Remedy**

Proceedings under the Plan shall be the exclusive, final and binding method by which Disputes are resolved.

6

11. **Electing Corporations**

A. Corporations or other legal entities, not otherwise Parties, may elect to be bound by this Plan by written agreement with Sponsor.

B. Election may be made only as to some types of Disputes, or only as to some persons, in the discretion of Electing Entity.

12. **Effective Date**

The effective date of this Plan shall be June 15, 1993, as amended as of August 15, 1999.

13. **Severability**

The terms of this Plan and the Rules are severable. The invalidity or unenforceability of any provision therein shall not affect the application of any other provision. Where possible, consistent with the purposes of the Plan, any otherwise invalid provision of the Plan or the Rules may be reformed and, as reformed, enforced.

14. **Administration**

Sponsor shall appoint one or more persons to administer the Plan who shall be known as the "Dispute Resolution Plan Administrator." The Dispute Resolution Plan Administrator shall be responsible for the management and administration of the Plan.

15. **Assent**

Employment or continued employment after the Effective Date of this Plan constitutes consent by both the Employee and the Company to be bound by this Plan, both during the employment and after termination of employment. Submission of an application, regardless of form, for employment constitutes consent by both the Applicant and the Company to be bound by this Plan.

7

**ATTACHMENT 2**

# HALLIBURTON DISPUTE RESOLUTION RULES

1. **Definitions**

   All definitions included in the Halliburton Dispute Resolution Plan apply to these Rules.

2. **Application**

   A. If different rules are applicable to a specific class of Disputes, and have been adopted by Sponsor and served on AAA, JAMS, or CPR, these Rules shall not apply to such class of Disputes.

   B. These Rules apply in the form existing at the time proceedings are initiated under them.

   C. To the extent consistent with these Rules, the Employment Dispute Resolution Rules of AAA, JAMS, or CPR also apply to all proceedings governed by these Rules.

3. **Initiation of the Process**

   A. A Party may initiate proceedings under these Rules at any time, subject to any defenses including those applicable to the timeliness of the claim, including limitations and laches.

   B. A Party may initiate proceedings by serving a written request to initiate proceedings on AAA, JAMS, or CPR and tendering the appropriate administrative fee.

   C. Copies of the request shall be served on all other Parties to the Dispute by AAA, JAMS, or CPR. The request shall describe the nature of the Dispute, the amount involved, if any, the remedy sought, and the proceeding locale requested.

   D. Proceedings may also be initiated by an Employee or Applicant by serving a written request to initiate proceedings on the Company's Dispute Resolution Plan Administrator. In such a case, the Company shall promptly forward any properly served request it has received to AAA, JAMS, or CPR.

   E. Parties against whom a claim is asserted shall file an answering statement within 21 days of receiving notice of intent to arbitrate or a specification of claims, which shall include any counterclaims and any request that the arbitrator (if any) prepare a statement of reasons for the award.

4. **Administrative Conference**

   AAA, JAMS, or CPR shall convene an administrative conference as soon as possible after receipt of the answering statement or after expiration of the time for filing an answering statement if one has not been filed. The conference may be held in person or by telephone. At the conference, AAA, JAMS, or CPR will determine whether the Parties are in agreement on a method to resolve the Dispute. If the Parties are in agreement, AAA, JAMS, or CPR will implement the procedure in accordance with their rules upon payment of any applicable fee. If the Parties cannot agree, or if the Parties have previously attempted and failed to resolve the Dispute by mediation or another nonbinding mechanism, the Dispute shall be arbitrated under these Rules.

5. **Appointment of Arbitrator**

   Immediately after payment of the arbitration fee, AAA, JAMS, or CPR shall simultaneously send each Party an identical list of names of persons chosen from a panel of qualified arbitrators which AAA, JAMS, or CPR shall select and maintain. Each Party to the Dispute shall have fourteen (14) days from the transmittal date to strike any names objected to, number the remaining names in order of preference, and return the list to AAA, JAMS, or CPR. If a Party does not return the list within the time specified, all persons therein shall be deemed acceptable. From among the persons who have been approved on both lists, and in accordance with the order of mutual preference, AAA, JAMS, or CPR shall invite the acceptance of the arbitrator to serve. Any Party shall have the right to strike one list of arbitrators in its entirety. When a Party exercises this right, AAA, JAMS, or CPR shall issue a new list of arbitrators consistent with the above procedures.

8

9

6.   **Qualifications of the Arbitrator**

No person shall serve as an arbitrator in any matter in which that person has any financial or personal interest. Prior to accepting appointment, the prospective arbitrator shall disclose any circumstance likely to prevent a prompt hearing or create a presumption of bias. Upon receipt of such information from the arbitrator or any other source, AAA, JAMS, or CPR will either replace that person or communicate the information to the Parties for comment. Thereafter, AAA, JAMS, or CPR may disqualify that person, and its decision shall be conclusive.

7.   **Vacancies**

If a vacancy occurs for any reason or if an appointed arbitrator is unable to serve promptly, the appointment procedure in Section 5 shall apply to the selection of a substitute arbitrator.

8.   **Date, Time and Place of Hearings**

   A.   The arbitrator shall set the date, time and place of any proceeding.

   B.   Notice of any hearing shall be given at least ten (10) days in advance, unless the arbitrator determines or the Parties agree that a shorter time is necessary.

   C.   The arbitrator shall make every effort, without unduly incurring expense, to accommodate the Employee or Applicant in the selection of a proceeding location.

9.   **Conferences**

At the request of AAA, JAMS, or CPR or of a Party or on the initiative of the arbitrator, the arbitrator or AAA, JAMS, or CPR may notice and hold conferences for the discussion and determination of any matter which will expedite the proceeding, including:

   A.   venue,

   B.   clarification of issues,

   C.   determination of preliminary issues, including summary determination of dispositive legal issues,

   D.   discovery,

   E.   the time and location of proceedings or conferences,

   F.   interim legal or equitable relief authorized by applicable law,

   G.   pre- or post-hearing memoranda,

   H.   stipulations; and / or

   I.   any other matter of substance or procedure.

10.   **Mode of Hearings and Conferences**

In the discretion of the arbitrator or by agreement of the Parties, conferences and hearings may be conducted by telephone or by written submission, as well as in person.

11.   **Pre-hearing Discovery**

   A.   On any schedule determined by the arbitrator, each Party shall submit in advance, the names and addresses of the witnesses it intends to produce and any documents it intends to present.

   B.   The arbitrator shall have discretion to determine the form, amount and frequency of discovery by the Parties.

   C.   Discovery may take any form permitted by the Federal Rules of Civil Procedure, as amended from time to time, subject to any restrictions imposed by the arbitrator.

12.   **Representation**

Any Party may be represented by counsel or by any other authorized representative.

13.   **Attendance at Hearings**

The arbitrator shall maintain the privacy of the proceedings to the extent permitted by law. Any person having a direct interest in the matter is entitled to attend the proceedings.

The arbitrator shall otherwise have the power to exclude any witness, other than a Party or other essential person, during the testimony of any other witness. The arbitrator shall determine

10

11

whether any other person may attend the proceeding. Upon the request of any Party, the arbitrator shall exclude any witness during the testimony of any other witness.

14. **Postponement**

   A.   The arbitrator, for good cause shown by a Party, or on agreement of the Parties, may postpone any proceeding or conference.

   B.   The Pendency of court proceedings related to the same matter is not good cause for postponement.

15. **Oaths**

   Before proceeding with the first hearing, each arbitrator may take an oath of office and, if required by law, shall do so. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if required by law or requested by any Party, shall do so.

16. **Record of Proceedings**

   There shall be no stenographic, audio, or video record of the proceedings unless either requested by one of the Parties or specified by the arbitrator. The Party requesting the record shall bear the entire cost of producing the same. Copies of the record shall be furnished to all other Parties upon request and upon payment of the cost of reproduction.

17. **Procedure**

   The proceedings shall be conducted by the arbitrator in whatever order and manner will most expeditiously permit full presentation of the evidence and arguments of the Parties.

18. **Arbitration in the Absence of a Party**

   The arbitrator may proceed in the absence of Parties or representatives who, after due notice, fail to be present or fail to obtain a postponement. An award shall not be made solely on the default of a Party. The arbitrator shall require any Party who is present to submit such evidence as the arbitrator may require for the making of an award.

12

19. **Evidence**

   A.   The arbitrator shall be the sole judge of the relevancy, materiality, and admissibility of evidence offered. Conformity to legal rules of evidence shall not be necessary.

   B.   The arbitrator may subpoena witnesses or documents at the request of a Party or on the arbitrator's own initiative.

   C.   The arbitrator may consider the evidence of witnesses by affidavit or declaration, but shall give it only such weight as the arbitrator deems appropriate after consideration of any objection made to its admission.

20. **Post-Hearing Submissions**

   All documentary evidence to be considered by the arbitrator shall be filed at the hearing unless the arbitrator finds good cause to permit a post-hearing submission. All Parties shall be afforded an opportunity to examine and comment on any post-hearing evidence. The arbitrator shall permit the filing of post-hearing briefs at the request of a Party and shall determine the procedure and timing of such filings.

21. **Closing and Reopening of Proceedings**

   A.   When the arbitrator is satisfied that the record is complete, including the submission of any post-hearing briefs or documents permitted by the arbitrator, the arbitrator shall declare the proceeding closed.

   B.   The proceeding may be reopened on the arbitrator's initiative or upon application of a Party at any time before the award is made.

22. **Waiver of Procedures**

   Any Party who fails to object in writing, after knowledge that any provision or requirements of these procedures and Rules have not been complied with, shall be deemed to have waived the right to object.

23. **Service of Notices and Papers**

   Any papers, notices, or process necessary or proper for the initiation or continuation of any proceeding under these Rules (including the

13

award of the arbitrator, any court action in connection therewith, or the entry of judgment on an award made under these procedures) may be served on a Party by mail addressed to the Party or his or her representative at the last known address or by personal service. AAA, JAMS, CPR, the Parties, and the arbitrator may also use facsimile transmission, telex, telegram, or other written forms of electronic communication to give any notices required by these Rules.

24. **Communications with the AAA, JAMS, CPR and the Company**

   A. Any Party may notice, serve or communicate with AAA by contacting:

   Regional Administrator
   American Arbitration Association
   1001 Fannin St., Suite 1005
   Houston, Texas 77002
   (713) 739-1302
   Fax: (713) 739-1702

   B. Any Party may notice, serve or communicate with JAMS by contacting:

   JAMS
   345 Park Avenue
   8th Floor
   New York, NY 10154
   (212) 751-2700
   Fax: (212) 751-4099

   C. Any Party may notice, serve or communicate with CPR by contacting:

   Center for Public Resources
   366 Madison Avenue
   New York, NY 10017-3122
   (212) 949-6490
   Fax: (212) 949-8859

   D. Any Party may notice, serve or communicate with the Company by contacting:

   Dispute Resolution Program
   Administrator
   The Halliburton Company
   4100 Clinton Drive
   Houston, Texas 77020-6299
   (713) 676-5383
   Fax: (713) 676-4470

14

25. **Communication with the Arbitrator**

   There shall be no communication between the Parties and the arbitrator other than at any oral hearings or conferences. Any other oral or written communications from the Parties to the arbitrator shall be directed to the AAA, JAMS, or CPR (and copied to the Parties) for transmission to the arbitrator, unless the Parties and the arbitrator agree otherwise.

26. **Time of Award**

   The award shall be promptly made by the arbitrator, unless otherwise agreed by the Parties or specified by applicable law, no later than thirty (30) days from the date of the closing of the proceeding or, if applicable, the closing of a reopened proceeding.

27. **Form of Award**

   The award shall be in writing and shall be signed by the arbitrator. The arbitrator shall write a statement of reasons for the award if requested to do so in the request to initiate proceedings or in the answering statement. The award shall be executed in any manner required by applicable law.

28. **Modification of Award**

   On order of a court of competent jurisdiction, or on agreement of the Parties, the arbitrator shall modify any award. The arbitrator may modify an award on the motion of a Party if the arbitrator finds that the award, as rendered, is ambiguous or defective in form, or if the award requires an illegal or impossible act. These are the only circumstances under which an arbitrator shall have jurisdiction to withdraw or modify an award.

29. **Settlement**

   If the Parties settle their Dispute during the course of the arbitration, the arbitrator may set out the terms of the settlement in a consent award.

30. **Scope of Arbitrator's Authority**

   The arbitrator's authority shall be limited to the resolution of legal Disputes between the Parties. As such, the arbitrator shall be bound by and shall apply applicable law including that related

15

to the allocation of the burden of proof as well as substantive law. The arbitrator shall not have the authority either to abridge or enlarge substantive rights available under applicable law. The arbitrator may also grant emergency or temporary relief which is or would be authorized by applicable law. The arbitrator shall be bound by and shall comply with the provisions of the Plan and Rules.

31. **Judicial Proceedings and Exclusion of Liability**

   A. Neither AAA, JAMS, CPR, nor any arbitrator is a necessary Party in any judicial proceedings relating to proceedings under these Rules.

   B. Neither AAA, JAMS, CPR, nor any arbitrator shall be liable to any Party for any act or omission in connection with any proceedings within the scope of these Rules.

   C. Any court with jurisdiction over the Parties may compel a Party to proceed under these Rules at any place and may enforce any award made.

   D. Parties to these Rules shall be deemed to have consented that judgment upon the award of the arbitrator may be entered and enforced in any federal or state court having jurisdiction of the Parties.

   E. Initiation of, participation in, or removal of a legal proceeding shall not constitute waiver of the right to proceed under these Rules.

   F. Any court with jurisdiction over the Parties may issue any injunctive orders (including preliminary injunctions) if the necessary legal and equitable requirements under applicable law are met pending the institution of proceedings under these Rules.

32. **Fees and Expenses**

   A. The expenses of witnesses shall be borne by the Party producing such witnesses, except as otherwise provided by law or in the award of the arbitrator.

   B. All attorney's fees shall be borne by the Party incurring them except as otherwise provided by law, by the Plan, or in the award of the arbitrator.

16

   C. Discovery costs (e.g., court reporter fees for original transcripts) shall be borne by the Party initiating the discovery. The cost of copies of deposition transcripts or other discovery shall be borne by the Party ordering the copy.

   D. The fees and expenses of experts, consultants and others retained or consulted by a Party shall be borne by the Party utilizing those services.

   E. The Employee or Applicant shall pay a $50 fee if he or she initiates arbitration or mediation. Otherwise, Employee/Applicant Parties shall not be responsible for payment of fees and expenses of proceedings under these Rules including required travel of an arbitrator or a mediator, expenses of an arbitrator, mediator, AAA, JAMS, or CPR, and the cost of any proof produced at the discretion of an arbitrator.

   F. If the demand for mediation or arbitration is initiated by the Company, such fees will be paid by the Company.

   G. Except as otherwise provided by law or in the award of the arbitrator, all other expenses, fees and costs of proceedings under these Rules shall be borne equally by the Parties who are not Employees/Applicants.

33. **Interpretation and Application of These Rules**

   The arbitrator shall interpret and apply these Rules insofar as they relate to the arbitrator's powers and duties. All other rules shall be interpreted and applied by the AAA, JAMS, or CPR.

34. **Applicable Law**

   A. Proceedings under these Rules and any judicial review of awards shall be governed by the Act.

   B. Except where otherwise expressly provided in these Rules, the substantive law applied shall be state or federal substantive law which would be applied by a United States District Court sitting at the place of the proceeding.

17

**35. Mediation**

At any time before the proceeding is closed, the Parties may agree to mediate their dispute by notifying AAA, JAMS, or CPR. AAA, JAMS, or CPR shall determine what procedures apply to any such mediation.

18

**APPENDIX**

# THE OMBUDSMAN ASSOCIATION

## *Code of Ethics*

*The ombudsman, as a designated neutral, has the responsibility of maintaining strict confidentiality concerning matters that are brought to his/her attention unless given permission to do otherwise. The only exceptions, at the sole discretion of the ombudsman, are where there appears to be imminent threat of serious harm.*

*The ombudsman must take all reasonable steps to protect any records and files pertaining to confidential discussions from inspection by all other persons, including management.*

*The ombudsman should not testify in any formal judicial or administrative hearing about concerns brought to his/her attention.*

*When making recommendations, the ombudsman has the responsibility to suggest actions or policies that will be equitable to all Parties.*

©The Ombudsman Association 1987

Reprinted with permission of
The Ombudsman Association

19

# THE OMBUDSMAN ASSOCIATION
# STANDARDS OF PRACTICE
© 1995

The mission of the organizational ombudsman is to provide a confidential, neutral and informal process which facilitates fair and equitable resolutions to concerns that arise in the organization. In performing this mission, the ombudsman serves as an information and communication resource, upward feedback channel, advisor, dispute resolution expert and change agent.

While serving in this role:

*1.* We adhere to The Ombudsman Association Code of Ethics.

*2.* We base our practice on confidentiality.

*2.1* An ombudsman should not use the names of individuals or mention their employers without express permission.

*2.2* During the problem-solving process an ombudsman may make known information as long as the identity of the individual contacting the office is not compromised.

*2.3* Any data that we prepare should be scrutinized carefully to safeguard the identity of each individual whose concerns are represented.

*2.4* Publicity about our office conveys the confidential nature of our work.

*3.* We assert that there is a privilege with respect to communications with the ombudsman and we resist testifying in any formal process inside or outside the organization.

*3.1* Communications between an ombudsman and others (made while the ombudsman is serving in that capacity) are considered privileged. Others cannot waive this privilege.

*3.2* We do not serve in any additional function in the organization which would undermine the privileged nature of our work (such as compliance officer, arbitrator, etc.)

*3.3* An ombudsman keeps no case records on behalf of the organization. If an ombudsman finds case notes necessary to manage the work, the ombudsman should establish and follow a consistent and standard practice for the destruction of any such written notes.

*3.4* When necessary, the ombudsman's office will seek judicial protection for staff and records of the office. It may be necessary to seek representation by separate legal counsel to protect the privilege of the office.

*4.* We exercise discretion whether to act upon a concern of an individual contacting the office. An ombudsman may initiate action on a problem he or she perceives directly.

*5.* We are designated neutrals and remain independent of ordinary line and staff structures. We serve no additional role (within an organization where we serve as ombudsman) which would compromise this neutrality.

*5.1* An ombudsman strives for objectivity and impartiality.

*5.2* The ombudsman has a responsibility to consider the concerns of all Parties known to be involved in a dispute.

*5.3* We do not serve as advocates for any person in a dispute within an organization; however, we do advocate for fair processes and their fair administration.

*5.4* We help develop a range of responsible options to resolve problems and facilitate discussion to identify the best options. When possible, we help people develop new ways to solve problems themselves.

*5.5* An ombudsman should exercise discretion before entering into any additional affiliations, roles or actions that may impact the neutrality of the function within the organization.

20

21

**5.6**    We do not make binding decisions, mandate policies or adjudicate issues for the organization.

**6.**    We remain an informal and off-the-record resource. Formal investigations - for the purpose of adjudication - should be done by others. In the event that an ombudsman accepts a request to conduct a formal investigation, a memo should be written to file noting this action as an exception to the ombudsman role. Such investigations should not be considered privileged.

**6.1**    We do not act as agent for the organization and we do not accept notice on behalf of the organization. We do always refer individuals to the appropriate place where formal notice can be made.

**6.2**    Individuals should not be required to meet with an ombudsman. All interactions with the ombudsman should be voluntary.

**7.**    We foster communication about the philosophy and function of the ombudsman's office with the people we serve.

**8.**    We provide feedback on trends, issues, policies and practices without breaching confidentiality or anonymity. We identify new problems and we provide support for responsible systems change.

**9.**    We keep professionally current and competent by pursuing continuing education and training relevant to the ombudsman profession.

**10.**    We will endeavor to be worthy of the trust placed in us.

Reprinted with permission of
The Ombudsman Association

22