# EXHIBIT E

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES ex rel.**<br>**JULIE McBRIDE,**<br>                              **Plaintiff,**<br><br>                       **v.**<br><br>**HALLIBURTON CO., et al.,**<br><br>                         **Defendants.** | **Civil Action 05-00828 (HHK)** |

### MEMORANDUM OPINION AND ORDER

This action is brought by plaintiff-relator Julie McBride, a former employee of Service

Employees International, Inc. ("SEII"), against defendants Halliburton Co., SEII, and Kellogg

Brown & Root Inc. (collectively, "KBR") for alleged violations of the False Claims Act

("FCA"), 31 U.S.C. § 3729 *et seq.*, breach of contract, and false imprisonment.[1]  The claims arise

out of defendants' performance of their duties under LOGCAP (Logistics Civil Augmentation

Program) III, an umbrella contract pursuant to which KBR provides support services to the

military.  McBride claims to have observed, while she was working in Iraq for SEII as a Morale,

Welfare and Recreation ("MWR") director, fraudulent activity giving rise to the submission of

false claims by KBR to the government for its LOGCAP costs.  She also claims she was

terminated in retaliation for acting as a whistleblower regarding the alleged fraud, and that KBR

falsely imprisoned her following her termination.

---

[1] A "relator" is a private party who brings claims pursuant to FCA.  *See* Part II, *infra*.

Before the court are three motions: McBride's motion pursuant to Fed. R. Civ. P. 15 for leave to file a second amended complaint and to add additional relators [#11];[2] defendants' motions to compel arbitration, to sever, and to stay arbitrable claims [#23 & #26]; and defendants' motion to dismiss McBride's FCA claims [#24]. Upon consideration of the motions, the oppositions thereto, and the record of the case, the court concludes that (1) the new relators may not join the action; (2) McBride's employment, retaliation and tort claims are arbitrable; and (3) McBride's complaint must be dismissed as to all claims except her allegation that KBR inflated its "Sit Rep" usage statistics at its Morale, Recreation and Welfare facilities in Iraq.

## I.  BACKGROUND

Defendants provide a variety of services to the United States military, including support services for the United States' ongoing military campaign in Iraq, pursuant to LOGCAP III. LOGCAP III is structured such that the KBR defendant entities receive payment (via nonparty Kellogg Brown & Root Services, Inc. ("KBRSI"), the direct contracting entity with the government) for their costs under the contract. KBRSI is then awarded a negotiated "fee award" over and above those costs from the government. Relevant to this suit, defendants' LOGCAP services to the military in Iraq have included MWR services for U.S. troops (such as recreation facilities and activities); housing construction; and dining services, particularly in Fallujah.

As the public generally is well aware, KBR has come under intense scrutiny for its performance under LOGCAP III, and a litany of allegations have surfaced regarding alleged KBR improprieties. This suit adds more allegations to the general clamor. Specifically, the current

---

[2] McBride has followed this motion with a "supplement" [#12] in which she seeks to add three, rather than two, relators and to further revise her complaint.

and proposed amended complaints allege, *inter alia*, that KBR (1) billed the government for meals not served to U.S. troops at its dining ("DFAC") facilities in Fallujah; (2) sold housing containers (colloquially referred to as "hooches") at exorbitant prices to the military; (3) inflated headcounts (collected via "situation reports," commonly referred to as "Sit Reps") documenting usage of its MWR facilities in Iraq and billed the government for "costs" that were calculated based on those inflated headcounts; and (4) made requisitions for supplies for the troops and then siphoned those supplies to KBR employees.

Julie McBride obtained employment with SEII in November 2004, and she worked as an MWR coordinator at Camp Fallujah, a military installation in Iraq, until March 2005.  Putative relator Denis Mayer likewise served as an MWR coordinator at Camp Fallujah from May 2004 until August 2005.  Putative relator Linda Warren was an MWR Tech at the same facility from January 2004 through January 2005.  Putative relator Frank Cassaday was an Ice Plant Operator for KBR at Camp A1 Asad and Camp Fallujah from July 2004 until May 2005.  These relators collectively allege that while working for KBR entities in Iraq, they observed, either directly or indirectly, KBR engage in the aforementioned alleged fraudulent activity.

## II. STATUTORY BACKGROUND

FCA allows private persons ("relators") to bring *qui tam* actions alleging violations of the Act on behalf of the government and for themselves.  31 U.S.C. § 3730(b)(1).  The phrase *qui tam* is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means "who pursues this action on our Lord the King's behalf as well as his own."  *See Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 769 n.1 (2000). A *qui tam* complaint is initially filed under seal, and the government is then granted a period of

3

time to investigate the allegations in the complaint.  31 U.S.C § 3730(b)(2).  The government

may then either pursue the action in its own right or decline to intervene.  *Id.* § 3730(b)(4).  If the

government declines to intervene, the relator is granted leave to litigate the action.  *Id.*

§§ 3730(b)(4)(B), (c).  When an action is successful or a settlement is reached, the relator

receives a percentage of the government's recovery.  *Id.* §§ 3730(d)(1)–(2).

FCA also creates a right of action, pursuant to which plaintiffs who are retaliated against

for attempting to bring fraudulent practices to the government's attention may sue the parties

who retaliate against them.  *Id.* § 3730(h).

### III.  PROCEDURAL HISTORY

McBride filed her initial complaint under seal on April 26, 2005.  The United States

declined to intervene in *propria persona* as to the *qui tam* claims in the complaint on June 26,

2006, and thereby allowed McBride to proceed on behalf of the government on her own.  *See id.*

§ 3730(b)(4)(B).  On November 24, 2006, McBride file the present motion to amend her

complaint, and she filed her "supplement" to that motion on December 7, 2006.  The four

defendants who are proper parties to this action (they waived service and the other named

defendants have not been served), in addition to opposing the motion for leave to amend the

complaint, thereafter filed a motion to compel arbitration of some of McBride's claims and a

motion to dismiss her other claims.

### IV.  ANALYSIS

The central questions before the court are (1) whether under FCA, McBride may invite

other ex-KBR employees to join her suit and add their allegations of wrongdoing to the

complaint; (2) whether these allegations are sufficiently new — i.e., whether they bring to light

4

frauds upon the government about which the public is not already aware; (3) whether McBride
and her putative co-relators are sufficiently connected to the allegations to pursue their claims;
(4) whether McBride and would-be relator Warren, who signed arbitration agreements with KBR
entities when they were hired, must arbitrate some of their claims, including their FCA retaliation
claims; and (5) whether the complaint sufficiently alleges that KBR has violated FCA at all.  The
court will first address McBride's request to add new relators and then will address the question
of arbitration.  Finally, the court will assess the motion to dismiss.

**A.      New Relators**

McBride seeks to add three new relators to her suit pursuant to Rule 15.  Defendants
challenge this request on two grounds: first, they argue that the new relators are barred from
joining the suit by FCA § 3730(e)(4)(A); second, they contend that the new relators are barred by
the so-called "first-to-file" rule, 31 U.S.C. § 3730(b)(5).  The former argument is dispositive, and
the new relators may not join the suit.[3]

FCA forecloses subject matter jurisdiction "over an action under this section based upon
the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing,
in a congressional, administrative, or Government Accounting Office report, hearing, audit, or
investigation, or from the news media, unless . . . the person bringing the action is an original
source of the information."  *Id.* § 3730(e)(4)(A).[4]  This provision is often referred to as creating a

---

[3] KBR also argues that McBride should not be allowed to amend because the amendment
would be prejudicial to the United States.  The court need not address this argument.

[4] A *qui tam* relator's qualification to proceed is an issue of subject matter jurisdiction.
*United States ex rel. Ervin & Assocs., Inc. v. Hamilton Sec. Group, Inc.*, 332 F. Supp. 2d 1, 4
(D.D.C. 2003) (citing *United States ex rel. Fine v. Advanced Sciences, Inc.*, 99 F.3d 1000, 1003
(10th Cir. 1996)).  A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)

"public disclosure bar" to would-be *qui tam* relators. *See Rockwell Int'l Corp. v. United States*,
__ U.S. __, 127 S. Ct. 1397, 1405 (2007). Whether the bar is triggered in a particular case
depends upon the meanings of various terms in the statute, including "based upon," "an action
under this section," and "original source." As will be seen, each of these terms carries a meaning
that is not readily apparent from a bare reading of the statute.

McBride contends that the public disclosure bar only applies to "actions," taken as a
whole, rather than to different *claims* (such as those brought by the new relators) appearing in a
single action. The Supreme Court's recent decision in *Rockwell, supra*, rejects this argument. In
*Rockwell*, the Court addressed the scope of the "original source" aspect of § 3730(e)(4)(A), and
in reaching its decision, it clarified that jurisdiction over a relator's claims should be assessed on
a per-claim basis. The statute "does not permit jurisdiction in gross just because a relator is an
original source with respect to some claim," the court wrote. 127 S. Ct. at 1410. "We, along
with every court to have addressed the question, conclude that § 3730(e)(4) does not permit such
claim smuggling." *Ibid.*[5] Quoting from a prior decision authored by then-Judge Alito, the Court
further explained that "[t]he plaintiff's decision to join all of his or her claims in a single lawsuit
*should not rescue claims that would have been doomed by section (e)(4) if they had been
asserted in a separate action.* And likewise, this joinder should not result in the dismissal of

---

requires the plaintiff to bear the burden of establishing, by a preponderance, that the court has
jurisdiction to hear her claims. *Ibid.* Accordingly, the plaintiff's factual allegations will bear a
greater scrutiny than they do on a motion to dismiss under Rule 12(b)(6). *Id.* at 4–5. The court is
not limited to the allegations in the complaint, either, but may also consider materials outside the
pleadings in its effort to assess jurisdiction. *Id.* at 5 (citing *EEOC v. St. Franci Xavier Parochial
Sch.*, 117 F.3d 621, 624–25 n.3 (D.C. Cir. 1997)).

[5] The relator in *Rockwell* was an original source for some claims, but these claims were
not before the Court for purposes of its decision. 127 S. Ct. at 1410.

6

claims that would have otherwise survived." *Ibid.* (emphasis added) (quoting *United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 102 (3d Cir. 2000)). Under *Rockwell*, then, the relevant question here is whether the new relators' claims would have been doomed by section (e)(4) if they had been asserted in a separate action.

The answer is yes. Even if the court were to allow the complaint to be amended, the allegations brought by the new relators are essentially identical to (and are therefore "based upon") those originally aired in McBride's existing complaint.[6]  And those allegations were publicly disclosed, both in the public arena (McBride testified before a congressional committee), Defs.' Exs. D, E, and pursuant to the unsealing of the complaint in this case, *see United States ex rel. McKenzie v. BellSouth Telecomms., Inc.*, 123 F.3d 935, 939 (6th Cir. 1997) (holding that documents that have been filed with a court, such as discovery documents and a plaintiff's complaint, trigger the public disclosure bar).  Because the new relators' claims are "based upon" previous publicly disclosed allegations, the new relators must be original sources of the information upon which their allegations are based to evade the public disclosure bar.

The new relators are not original sources. By the express terms of the statute, they would only qualify if they "voluntarily provided the information to the Government before filing" their

_____

[6] Because they are identical to McBride's allegations, the new relators' claims are "based upon" those allegations for purposes of the statute, even though the new relators have independent pre-disclosure knowledge of the alleged fraudulent practices. *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994) (allegations are "based upon" other allegations where "either the allegation of fraud or the critical elements of the fraudulent transaction themselves were in the public domain"); *United States ex rel. D.J. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 682–85 (D.C. Cir. 1997) (holding that the phrase "based upon" should be read as "supported by," not "derived from").

claims.  31 U.S.C. § 3730(e)(4)(B); *Rockwell*, 127 S. Ct. at 1410.  They did not do so, and their

claims therefore are barred.[7]

## B.      Arbitration

KBR moves to compel arbitration of McBride's employment-related claims, including

her claim of false imprisonment, as well as would-be relator Warren's employment-related

claims.  All these claims are arbitrable.

McBride concedes the arbitrability of her breach of contract claim, but asserts that her

FCA retaliation claim (brought pursuant to § 3730(h)) and her false imprisonment claim are not

arbitrable.[8]  As to the retaliation claim, under the Federal Arbitration Act, the party "seeking to

avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration

of the statutory claims at issue."  *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 92

---

[7] The only way the new relators' claims could be rescued is if the court were to grant the motion to amend the complaint and if the new claims related back to the filing of the original complaint.  McBride does not raise this possibility, and in the court's view, it is foreclosed.  To the extent that Rule 15 is a proper means by which to add parties to a complaint, the same restrictive relation-back rule which governs the addition of defendants should apply to the addition of plaintiff-relators.  *See* Fed. R. Civ. P. 15(c) (only allowing relation back where the wrong defendant was served and the correct defendant knew of the suit) *and id.* 1966 Amendment note (stating that in cases where amendments changing plaintiffs are sought, "the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs").  The would-be relators here would not satisfy any plaintiff-oriented analogue to Rule 15(c).

[8] Warren concedes that her breach-of-contract claim is likewise arbitrable and argues that her retaliation claim is not arbitrable on the same grounds asserted by McBride.  She seeks to avoid compelled arbitration of her contract claim by arguing that the question should not be resolved until her eligibility to join the *qui tam* portion of the suit is determined.  Having determined that Warren may not pursue her *qui tam* claims, the court construes Warren's argument as a withdrawal, subject to a (now satisfied) condition precedent, of the motion for leave to amend as to that claim.  Because this withdrawal is made effective by the court's ruling on Warren's other claims, the contract claim has never been filed, and defendants' motion to compel arbitration is therefore moot.

(2000).  Such an intention may be evinced by the text of the statute, its legislative history, or an

"inherent conflict" between arbitration and the statute's underlying purposes.  *Gilmer v.*

*Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).  McBride relies on the Northern District

of Ohio's decision in *Nguyen v. City of Cleveland*, 121 F. Supp. 2d 643 (N.D. Ohio 2000), in

which the court held that though no congressional intent to preclude arbitration of FCA

retaliation claims appears in the statute or its legislative history, an inherent conflict exists

between arbitration and the underlying purposes of FCA.  *Id.* at 647.  No such conflict exists.

> FCA § 3730(h) provides:
>
>> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. . . .  An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

31 U.S.C. § 3730(h).  This section is separate from its sister FCA provisions in that claims

thereunder are not brought as *qui tam* actions but rather on behalf of the plaintiff herself.  The

government has no monetary interest in these claims and is not a party thereto.  Thus McBride is

wrong to argue that there is anything unique about § 3730(h) retaliation claims relative to other

statutes providing for private actions (including those creating private actions against employers

for retaliation), which actions courts have deemed to be arbitrable.  *See Gilmer*, 500 U.S. at 35

(requiring arbitration of a claim arising under the Age Discrimination In Employment Act);

*Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1467–68 (D.C. Cir. 1997) (requiring arbitration

Title VII claims, including a retaliation claim); *McWilliams v. Logicon, Inc.*, 143 F.3d 573, 576

(10th Cir. 1998) (requiring arbitration of a claim arising under the Americans with Disabilities Act).  Nor does the government have any rights as to § 3730(h) claims which private parties to arbitration agreements are incapable of waiving.[9]

The reasoning of *Nguyen*, which is grounded on the combination of "the policies of the FCA" and the fact that employees have unequal bargaining power vis-à-vis their employers, 121 F. Supp. 2d at 646–47, is unpersuasive.  *See Orcutt v. Kettering Logistics*, 199 F. Supp. 2d 746, 753–56 (S.D. Ohio 2002) (rejecting *Nguyen*); *Mikes v. Strauss*, 889 F. Supp. 746, 755–56 (S.D.N.Y. 1995) (compelling arbitration of a § 3730(h) claim); *see also Nudelman v. Int'l Rehab. Assoc., Inc.*, 2006 WL 3098009 (E.D. Pa. Oct. 30, 2006) (compelling arbitration of an FCA retaliation claim without addressing the questions raised by *Nguyen*, *Orcutt* and *Strauss*).  If unequal bargaining power in employment relationships were a dispositive issue, claims under Title VII, ADEA, and ADA would be exempt from arbitration, but that is not the case.  And there is nothing particularly unique about the policies of FCA — and in particular § 3730(h) — relative to those of other federal statutes creating arbitrable causes of action (including causes of action for retaliation).[10]  McBride's § 3730(h) claim, which she apparently concedes may

---

[9] FCA retaliation plaintiffs need not be relators at all — they can bring their § 3730(h) claims whether or not they file *qui tam* actions, and without involving the government.  *See* 31 U.S.C. § 3730(h).  This fact belies the notion that the government is a party-in-interest to these claims at any level, let alone that, as McBride contends, the government holds interests in retaliation claims which cannot be waived by third parties who enter arbitration agreements.

[10] McBride contends that allowing arbitration of FCA retaliation claims would "tip" defendants as to the pendency of *qui tam* suits.  Rel.'s Opp'n to Mot. to Compel at 7–8.  But nothing in FCA requires that retaliation claims be filed either before or with *qui tam* suits arising from protected whistleblowing activity.  Indeed, the statute creates a cause of action for retaliation taken *after* (as well as because of) the filing of a *qui tam* complaint.  And even if such claims appear in a *qui tam* complaint, they remain sealed until the government has completed its investigation, thus preventing any premature "tipping" of the *qui tam* defendants.  The only way

adequately be vindicated in the arbitral forum provided in the agreement, must be arbitrated.  *See*

*Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 79) (D.C. Cir. 2005) ("Statutory claims may be

subject to agreements to arbitrate, so long as the agreement does not require the claimant to forgo

substantive rights afforded under the statute.").[11]

McBride's false imprisonment claim is likewise arbitrable.  The only relevant question

regarding this claim is whether it falls within the scope of the parties' arbitration agreement (the

general fairness of which McBride does not contest).  The agreement covers "any matters with

respect to" McBride's employment with KBR, including the termination of her employment, as

well as "any other matter related to or concerning the relationship between the Employee and the

Company."  Defs.' Mot. to Compel Arbitration, Ex. B, Attach. 1 at 2.  McBride's tort claims

easily fall within this stated scope.  *See AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643,

651 (an order compelling arbitration pursuant to an agreement "should not be denied unless it

may be said with positive assurance that the arbitration clause is not susceptible of an

interpretation that covers the asserted dispute" and "[d]oubts should be resolved in favor of

---

by which a defendant would even arguably know if a *qui tam* suit was pending is if the plaintiff made the strategic error of seeking arbitration of an FCA retaliation claim prior to the separate filing and unsealing of the *qui tam* complaint.  Even then, the pendency would be merely inferred.

[11] Though the question of adequacy is conceded, the court has reviewed the KBR Dispute Resolution Program, Defs.' Mot. to Compel Ex. B, and, considering the factors set forth in the D.C. Circuit's decision in *Cole*, 105 F.3d at 1483–84 & n.11, sees no immediately apparent reason to doubt that the program provides a forum in which McBride's statutory rights under FCA § 3730(h) may be vindicated in full.

coverage" (quoting *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83

(1960))).[12]  These claims will be severed and stayed pending arbitration.

## C.    McBride's FCA Claims

Because McBride's retaliation and false imprisonment claims must be arbitrated, the

remaining question is whether McBride's complaint can survive a motion to dismiss.  KBR

contends that (1) McBride's claims are barred by the public disclosure rule; (2) McBride has

failed to adequately allege "presentment" of any false claims by defendants; and (3) McBride has

failed to allege fraud with particularity, as required by Fed. R. Civ. P. 9(b).

### 1.    Whether The Public Disclosure Rule Bars McBride's Claims

As noted, if McBride's claims are "based upon" publicly disclosed allegations or

transactions, her action is barred unless she is an "original source" of the information upon which

her action is based.  31 U.S.C. § 3730(e)(4)(A).

#### a.    Is This Action "Based Upon" Publicly Disclosed Allegations Or Transactions?

KBR asserts that in light of the widespread publicity regarding allegations of impropriety

in its activities in the Middle East, McBride's allegations add nothing and are therefore "based

upon" the already-public allegations.  To support this argument, KBR points to a litany of news

articles demonstrating that KBR endured a hailstorm of accusations, which, in its view, included

accusations sufficiently similar to McBride's to trigger the public disclosure bar.  *See* Defs.' Mot.

to Dismiss, Ex. 3 Attach. (collecting news articles).

---

[12] McBride alleges that false imprisonment is a "grave and independent tort inherently not amenable to arbitration."  Rel.'s Opp'n to Mot. to Compel at 8.  She cites to no persuasive authority, however, that this is the case.

The public disclosure bar is triggered when "either the allegation of fraud or the critical elements of the fraudulent transaction themselves were in the public domain." *Quinn*, 14 F.3d at 654. "Congress did not prescribe by mathematical formulae the quantum or centrality of nonpublic information that must be in the hands of the *qui tam* relator in order for suits to proceed," *id.* at 653, but the D.C. Circuit has held that "*qui tam* suits are limited to those in which the relator has contributed significant independent information." *Ibid.* Here, McBride raises four claims: (1) that KBR billed the government for meals not served at its dining ("DFAC") facilities in Fallujah; (2) that KBR sold housing containers at exorbitant prices to the military; (3) that KBR inflated the Sit Rep numbers documenting usage of its MWR facilities in Iraq; and (4) that KBR made requisitions for supplies on behalf of the troops and then siphoned those supplies to KBR employees.[13]

McBride's allegations regarding dining facilities contribute no significant independent information. As KBR's submissions reveal, allegations of overcharging for meals served to U.S. troops serving in the Iraq invasion and occupation had surfaced well before McBride came forward, and those allegations prompted a fairly comprehensive review by the government. Defs.' Mot. to Dismiss Ex. 3, Attach. Exs. 19, 25, 27–28, 31–33, 36–37, and 45.[14] While not specific to Fallujah, these prior allegations are sufficiently similar (in manner, time, and context)

---

[13] She also alleges that KBR held a lavish Super Bowl party for its employees, but she does not connect this party to any fraudulent or false claims. This allegation does not state a claim for which relief can be granted.

[14] Because McBride's qualification to bring her claims is a question of subject matter jurisdiction, the court may assess this information without converting defendants' motion into one for summary judgment. *Hamilton Sec. Group*, 332 F. Supp. 2d at 4.

to McBride's allegations that the government may be deemed to have been on notice of the fraudulent activity she alleged.

The other allegations in the complaint have no significant public precursors. The only prior allegations related to MWR billing are those that KBR paid exorbitant prices for hand towels, *id.* Attach. Exs. 22, 38, and exercise machines, *id.* Attach. Ex. 23. Overpriced purchases such as these are not substantially similar to inflated headcounts at MWR facilities. The other two of McBride's core allegations — the siphoned requisitions and the inflated "container" sales — are entirely new.

KBR argues that the public accusations of fraud and overcharging by its entities were so pervasive that the government can be said to have been "on the trail" of fraud, such that, even if McBride's allegations had not been previously disclosed, it did not matter for the statute's purposes, since her particular claims added little to what the public already knew. Indeed, the government's scrutiny of KBR's actions under LOGCAP was broad and comprehensive. KBR has not pointed to (nor has the court found) evidence, however, that allegations related to or similar to the alleged transactions here — MWR usage, siphoned requisitions, or overcharging for housing containers — had surfaced before McBride levied her public charges, nor that these aspects of KBR's LOGCAP performance were subject to government scrutiny. For purposes of this motion, the mere evidence of broad auditing activity, without more, does not establish that public disclosure had occurred prior to McBride's allegations. The public disclosure bar does not apply to McBride's remaining claims.

### b.    Is McBride An "Original Source"?

Even if her claims are "based on" prior publicly disclosed information, McBride can still pursue her claims if she is an original source of the information in her allegations.  The court must therefore determine whether she is an original source as to her DFAC allegations (the one category affected by the public disclosure bar).  The statute defines an original source as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the government before filing an action under the section which is based on the information."  31 U.S.C. § 3730(e)(4)(B). The "information" about which the relator must have direct and independent knowledge is the information upon which her allegations are based, rather than upon which the initial public disclosures are based.  *Rockwell*, 127 S. Ct. at 1407.  In this context, "direct" means "marked by absence of an intervening agency."  *Quinn*, 14 F.3d at 656 (quoting *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1160 (3d Cir. 1991)).[15] "'Independent knowledge' is knowledge that is not itself dependent on public disclosure." *Quinn*, 14 F.3d at 656.  A relator need not have knowledge of every element of the fraudulent activity.  Rather, she need only have direct and independent knowledge of "any essential element of the underlying fraud transaction."  *Id.* at 657.

---

[15] The Third Circuit further explained in *Stinson* — a decision cited with approval in *Quinn* — that "[t]he paradigmatic 'original source' is a whistleblowing insider.  This covers those the Senate Report specifically referred to: 'individuals who are close observers or otherwise involved in the fraudulent activity.'" 944 F.2d at 1161 (quoting S. Rep. No. 99-345, at 4 (1986)).  The court added, "[o]ther relators may also qualify if their information results from their own investigations."  *Ibid.*  The D.C. Circuit has said elsewhere that "direct" knowledge is "first-hand" knowledge.  *Findley*, 105 F.3d at 690.

15

As to the DFAC allegations, McBride may have direct and independent knowledge, but even if she does, her claim is barred because to qualify as an original source, a relator must "provide the government with the information prior to any public disclosure." *Findley*, 105 F.3d at 690–91. She did not do so. Hence, the public disclosure bar prevents her from pursuing her DFAC-related claims.[16] Her other claims are not barred.

---

[16] The court notes that the continuing viability of this requirement announced in *Findley* is unclear. *Findley* also held that the "information" of which a relator must be an original source is the information underlying the statute-triggering public disclosures. 105 F.3d at 690. This holding was rejected by the Supreme Court in *Rockwell*. 127 S. Ct. at 1407. To the extent that *Findley*'s misreading of the term "information" informs its holding that the relator must provide the information prior to the public disclosures, that holding may be undercut by *Rockwell*. It is also arguably at odds with the plain text of the statute, which only requires that the would-be relator provide the information to the government "before filing an action." 31 U.S.C. § 3730(e)(4)(B); *see also United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1015–16 (9th Cir. 2006) (disagreeing with *Findley* on this point). Nonetheless, the central reason for *Findley*'s holding, that "[o]nce the information has been publicly disclosed . . . there is little need for the incentive provided by a *qui tam* action," 105 F.3d at 691, still has force, and the court will not lightly infer an abrogation of settled precedent. Moreover, it makes some logical sense, as this case illustrates. If the Circuit's pre-public-disclosure presentment requirement did not apply, a relator like McBride, who happens to have independent information regarding a publicly disclosed fraud, could wait for the fraud to be disclosed via other means and *then* go to the government with her own allegations, and, so long as she was thereafter the first to file a *qui tam* action, *see* 31 U.S.C. § 3730(b)(5), recover — without ever materially illuminating the underlying fraud for the public and the government. In addition, by being first to file, she could preclude any actual whistleblowers who came forward prior to (and perhaps created) the public disclosures from their just recovery. On the other hand, the court sees no compelling reason why Congress could not have intended for a relator to recover in precisely that situation. If the statute allows claims like McBride's, it provides incentives for legitimate whistleblowers to come forward, even when aspects of fraud are publicly known, and flesh out the public record. Those who do so (and get to the courthouse first) are not entirely parasitic, and, moreover, they assist the government in recovering for frauds which it may know about but for whatever reason declines to pursue on its own.

### 2.    Whether McBride Has Adequately Alleged Presentment

FCA requires that false or fraudulent claims be presented to the government.  This

"presentment" requirement may apply whether the relator is proceeding on a theory of "false

claims," 31 U.S.C. § 3729(a)(1), or of "false records or statements," *id.* § 3729(a)(2); *United*

*States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488 (D.C. Cir. 2004) (holding that claims

under either subparagraph against Amtrak could not stand, since Amtrak is not the government).

McBride appears to be alleging claims pursuant to subparagraph (2), rather than (1), as the actual

LOGCAP bills were submitted by nonparty KBRSI.  KBR argues that here, there is no allegation

that false statements — as opposed to payment requests deemed false because of an implied

certification that the claimant had complied with all applicable obligations regarding its conduct

under LOGCAP[17] — were submitted.

The court disagrees in part.  Though the allegations undeniably are lean, McBride does

allege that KBRSI submitted false claims regarding MWR headcounts.  Her complaint states that

payment under LOGCAP for MWR costs was based, at least "in significant part," on usage, i.e.,

---

[17] As KBR rightly contends, under current D.C. Circuit law, the implied certification
theory pursued in the alternative by McBride does not help her.  To the extent that statements
may be rendered false indirectly via implied certification of compliance with obligations external
to the actual claims submitted to the government, that rendering may only occur where the
government's "payment is conditioned on that certification."  *United States ex rel. Siewick v.*
*Jamieson Sci. & Eng'g, Inc.*, 214 F.3d 1372, 1376 (D.C. Cir. 2000); *see also United States ex rel.*
*Pogue v. Diabetes Treatment Centers of America, Inc.*, 238 F. Supp. 2d 258, 264 (D.D.C. 2002)
(the "theory of implied certification . . . is that where the government pays funds to a party, and
would not have paid those funds had it known of a violation of a law or regulation, the claim
submitted for those funds contained an implied certification of compliance with the law or
regulation and was fraudulent").  Here, it is undisputed that KBR need not have complied with
each of its obligations, whether regulatory or contractual, to be paid.  The standard for payment
under LOGCAP (at least of the "award fee") was flexible, and payment was allowed even where
compliance was not exact.  *See* Defs.' Reply in Supp. of Mot. to Dismiss Ex. 2 at 3–10.

"the number of patrons who utilize the facilities." Proposed 2nd Am. Compl. ¶ 24 ("[T]he U.S. paid KBR for the MWR facilities according to usage.").[18] Read in the light most favorable to McBride, this allegation may be deemed to state that Sit Rep usage statistics are used to calculate KBR's costs under LOGCAP. These costs are then submitted for payment to the government.

KBR contends that costs are not calculated in this manner under LOGCAP, but it points to nothing in the contract or elsewhere in the record available to the court (for purposes of Rule 12(b)(6)) demonstrating this is the case. KBR makes great hay of the fact that any inflated costs would have run (and in fact did run) the risk of a lower fee award (the amount paid over and above the cost of performance) from the government, but whether any alleged fraud regarding *costs* had an impact on KBR's eventual awarded "*profit*" (a bit of a misnomer, if McBride's cost-calculation allegations are to be believed) is irrelevant. If KBR made false statements regarding costs to get claims paid, FCA imposes liability.

KBR also contends that it could not have inflated its costs because its payment for those costs was pre-negotiated to have an estimated ceiling. This estimate, however, apparently was not used to pre-determine payment for *costs* or to set a cost ceiling; rather, it was used for evaluative purposes in the context of assessing the appropriate *award fee* (i.e., KBR's profit over and above the compensation for its costs). Defs.' Reply Attach. 2, § H.36(c). And though KBR correctly notes that inflating costs would run the risk of non-reimbursement (because the Federal Acquisition Regulation limits reimbursement of costs to the pre-agreed estimate unless the

---

[18] Elsewhere in the complaint (indeed, elsewhere in the same paragraph), McBride retreats from this assertion, alleging that KBR justified its need for greater spending on MWR and inflated an unidentified "budget" (none exists) based on the inflated headcounts. Proposed 2nd Am. Compl. ¶¶ 24–25, 44. Nonetheless, her most direct assertion — that usage statistics were used to calculate the costs claimed to the government — still remains.

contractor provides notice and the government agrees to pay the higher costs, *see* 48 C.F.R.

§§ 52.232-20, 232-22; *Viacom, Inc. v. United States*, 70 Fed. Cl. 649, 657 (2006) ("The

Limitation of Funds clause provides that the government's liability for a contract is limited to the

'total amount allotted by the government to the contract,' unless notice is given and more money

is authorized.")), the existence of the *risk* of nonpayment does not undermine McBride's

allegations that KBR took that risk.  In raising this point, KBR appears to be arguing that for

prudential reasons it "just wouldn't do" what McBride alleges it did.  But that is a question for

summary judgment.  For purposes of Rule 12(b)(6), it is sufficient that McBride makes the

allegation, which is, at the very least, plausible.[19]

All this being said, the court agrees with KBR that outside of McBride's MWR Sit Rep

allegations, there are no sufficient allegations of any false claims being presented as to her

myriad other claims.  Thus, her claims regarding overpriced housing containers, soft drinks, the

Super Bowl party, siphoned requisitions,[20] gym equipment, *et cetera*, cannot go forward.

---

[19] It is certainly conceivable, if not reasonable to imagine, that a government contractor (particularly one operating under a large-scale contract governing services provided in wartime and in the field of battle, which contract guarantees payment for costs) might inflate its costs — or at least allow its costs to overrun pre-performance estimates — based on the contractor's acceptance of a calculated risk that the government might balk when it receives notice of the overruns.

[20] The siphoning allegations present a closer question than their peers but still lack substance.  Even though the alleged requisitions were themselves "false," there is nothing false or fraudulent about KBR requesting that it be paid for those requisitions, since KBR was empowered under LOGCAP to make such requests for both the troops and its employees.

### 3.   Whether McBride Has Met The Particularity Requirements Of Fed. R. Civ. P. 9(b)

Finally, KBR argues that McBride has not pleaded her claims with adequate particularity. Specifically, KBR contends that McBride has failed to allege the specific individuals involved in the fraud.[21]  The court is not persuaded.  To the extent that KBR posits that McBride must identify with particularity the person or entity who made the false statements *to the government*, KBR is wrong.  The complaint is primarily based upon a theory of liability under § 3729(a)(2), which creates liability where false records or statements are made, but where third parties are the ones responsible for the actual submission of the false claims.  *See Totten*, 380 F.3d at 501–02 (holding that the false statement theory is "designed to prevent those who make false records or statements to get claims paid or approved from escaping liability solely on the ground that they did not *themselves* present a claim for payment or approval").  McBride's complaint adequately identifies persons involved in the preparation of the alleged false Sit Rep records, and this identification is sufficient for purposes of subsection (a)(2).   Because McBride has adequately identified the involved parties and persons, KBR's extensive reliance on *United States ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (noting that a *qui tam* relator must identify the person responsible for the fraud), is unavailing.[22]

---

[21] Because only McBride's MWR Sit Rep allegations pass the other hurdles discussed above, the court's analysis of particularity is limited solely to these allegations.

[22] Even if the complaint were deficient in this respect, McBride could allege lack of access to critical information in KBR's possession.  Though she has not done so in her complaint, *Williams*, 389 F.3d at 1258 ("This circuit provides an avenue for plaintiffs unable to meet the particularity standard because defendants control the relevant documents — plaintiffs in such straits may allege lack of access in the complaint."), were McBride to request further leave to amend her complaint to make this specific allegation, the court would grant the request.

Rule 9(b) requires that sufficient facts be pleaded so that the defendants are able to "defend against the charge and not just deny that they have done anything wrong." *Id.* at 1259 (quoting *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001)). McBride has met this standard, alleging a particular scheme to inflate MWR usage statistics, which statistics were then used, in part, to substantiate KBR's LOGCAP costs, which costs where then presented by third parties to the government for payment. These allegations fully enable KBR to defend itself.

## V. CONCLUSION

This case may proceed on a limited basis. For the reasons articulated in this memorandum, and in accordance with the foregoing analysis, it is this 5th day of July, 2007, hereby

**ORDERED** that defendants' motions to compel arbitration, to sever, and to stay [#23 & #26] are **GRANTED** as to McBride's claims III through V and **DENIED** as moot as to would-be relator Warren; and it is further

**ORDERED** that defendants' motion to dismiss [#24] is **GRANTED** in part and **DENIED** in part as set forth in this memorandum; and it is further

**ORDERED** that relator's motion to amend the complaint [#11], as supplemented [#12], is **GRANTED** in part and **DENIED** insofar as it seeks to add additional relators and claims brought thereby; and it is further

**ORDERED** that the court's April 9, 2007 order suspending Fed. R. Civ. P. 26 deadlines is hereby **VACATED**; and it is further

**ORDERED** that on or before July 20, 2007, the parties shall submit a report pursuant to

LCvR 16.3, with a proposed discovery plan and proposed deadlines governing this case.  The

court will schedule a status conference in this matter, to be held shortly after the submission of

the LCvR 16.3 report, in a separate order.


Henry H. Kennedy, Jr.
United States District Judge